# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JERREL FILES,

Defendant-Appellant.

UNPUBLISHED
January 26, 2016

No. 321336
Wayne Circuit Court
LC No. 13-010861-FC

Before: RIORDAN, P.J., and JANSEN and FORT HOOD, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of first-degree felony-murder, MCL 750.316(1)(b), second-degree murder, MCL 750.317, assault with intent to rob while armed, MCL 750.89, felon in possession of a firearm ("felon-in-possession"), MCL 750.224f, and possession of a firearm during the commission of a felony ("felony-firearm"), MCL 750.227b. The trial court sentenced defendant as a third habitual offender, MCL 769.11, to life imprisonment for the felony-murder conviction, 33 to 50 years' imprisonment for the second-degree murder and assault with intent to rob while armed convictions, and 5 to 10 years' imprisonment for the felon-in-possession conviction, to be served consecutive to a two-year term of imprisonment for the felony-firearm conviction. We vacate defendant's conviction and sentence for second-degree murder, but affirm in all other respects.

## I. FACTUAL BACKGROUND

Defendant's convictions arise from the April 13, 2013 shooting death of Michael Uche, a cab driver for the Checker Cab Company, during an apparent robbery. Uche had been dispatched shortly after 6:00 a.m. to 16460 Eastburn Street in Detroit, Michigan, to service a call from a customer, whose name was unknown. The phone number used to contact the cab company to arrange for the cab ride belonged to a cell phone owned by Shirley Dailey, who was the mother of defendant's girlfriend, Shara Dailey.[1] At the time, Shirley and Shara resided at

---

[1] To avoid confusion, we will refer to Shirley Dailey as "Shirley" and Shara Dailey as "Shara" in this opinion.

-1-

16452 Eastburn Street. Shortly thereafter, Uche was shot on Goulburn Street, approximately three miles away from Shirley's and Shara's home on Eastburn.

A married couple living in a house on Goulburn Street heard gunshots early in the morning on April 13, 2013. When they looked outside, they saw the victim lying on the ground next to the passenger side of his cab with the back passenger door of the cab open. They saw a man wiping down the passenger door and the inside of the cab, and it looked as though he took something out of the victim's pocket and ran from the scene. He was gone by the time the police arrived. Later that day, police arrested defendant after locating him with Shara and another woman.

During the investigation, evidence was seized from Shirley's home, and Shara provided statements to the police and an assistant prosecutor on April 13, 2013, April 14, 2013, and April 16, 2013, regarding, *inter alia*, defendant's conduct and whereabouts before and after the murder and her previous observations of firearms in defendant's possession. On April 16, 2014, pursuant to an investigative subpoena, Shara testified and identified defendant's voice on the recording of the phone call placed to the Checker Cab Company immediately prior to the homicide.

At defendant's trial in March 2014, Shara failed to appear and could not be located. The trial court found that Shara was unavailable due to defendant's efforts to persuade her to absent herself from the proceedings. Accordingly, the court allowed the prosecution to admit, under to MRE 804(b)(6), Shara's prior statements to the police and Shara's prior testimony provided pursuant to an investigative subpoena. Numerous other witnesses also testified at trial, including, among others, Shirley; police officers involved in the investigation; an inmate at the Wayne County Jail, with whom defendant discussed the crime while both men were incarcerated; and several alibi witnesses.

## II. UNAVAILABLE WITNESS TESTIMONY

Defendant argues that the trial court erred by allowing the introduction of Shara's prior statements pursuant to MRE 804(b)(6). We disagree.

## A. STANDARD OF REVIEW

We review a trial court's evidentiary rulings for an abuse of discretion. *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). "Preliminary questions of law, including whether a rule of evidence precludes the admission of evidence, are reviewed de novo." *Burns*, 494 Mich at 110. However, preliminary questions of fact relating to the admissibility of evidence are to be determined by the trial court. *Id*. at 117 n 39, citing MRE 104(a). In making that determination, the court is not bound by the rules of evidence, except for those relating to privileges. MRE 104(a); *People v Barrett*, 480 Mich 125, 137; 747 NW2d 797 (2008). We review the trial court's factual findings for clear error. *People v Barrera*, 451 Mich 261, 269; 547 NW2d 280 (1996). "A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been

made." *People v Gingrich*, 307 Mich App 656, 661; 862 NW2d 432 (2014) (quotation marks and citation omitted).

## B. ANALYSIS

Pursuant to MRE 804(b)(6), a prior statement made by an unavailable witness is not excluded by the rule against hearsay when it is "offered against a party that has engaged in or encouraged wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness." See also *Burns*, 494 Mich at 110. "To admit evidence under MRE 804(b)(6), the prosecution must show by a preponderance of the evidence that: (1) the defendant engaged in or encouraged wrongdoing; (2) the wrongdoing was intended to procure the declarant's unavailability; and (3) the wrongdoing did procure the unavailability." *Id*. at 115.

The trial court found that the wrongful conduct that led to Shara's unavailability at trial occurred on August 9, 2013, when defendant told Shara, during a recorded telephone conversation from jail, that he needed her to "stay out [of] the way" and, in effect, not to appear at trial.[2]  Before this phone call, the last time that Shara had testified was at defendant's preliminary examination in the first case on May 23, 2013.

Defendant neither disputes that Shara was unavailable as a witness at trial nor challenges the trial court's finding that he engaged in wrongdoing intended to procure Shara's unavailability.  He only argues that the prosecution failed to establish the third requirement that "the wrongdoing did procure the unavailability." *Id*.  To satisfy this element, the defendant's wrongdoing must, in fact, have caused the witness's unavailability. *Id.* at 119.

Defendant contends that the trial court erred in finding that he actually procured Shara's absence from trial because there were other possible reasons for why she failed to appear in court.  He speculates that she may have failed to appear because she did not want to admit once again that she used drugs; because she had "heard too many lies," in light of her statements to Shirley three weeks earlier; or because she wanted to avoid arrest in light of an active "absconder warrant."  Consistent with defendant's arguments on appeal, the trial court acknowledged that an individual could have a variety of reasons for not wanting to appear in court, but it found no reason for Shara's unavailability other than defendant's request that she "stay out of the way."  Accordingly, the court found that the prosecution had "established by a preponderance of the evidence that [Shara's unavailability was] a result of [defendant's] wrongdoing."

The fact that different inferences concerning Shara's failure to appear could be drawn from the evidence does not establish that the trial court's finding was erroneous.  See *People v Jones*, 270 Mich App 208, 221; 714 NW2d 362 (2006).  Likewise, the prosecution was not required to disprove all possible reasons for Shara's absence; it was only required to show, by a

---

[2] Shirley testified at trial that defendant similarly attempted to influence her testimony, telling her to say "you don't recall," to say that she was high, and to "do what Shell did."  During another phone call between Shara and defendant, defendant stated that he wanted Shirley and Shara to change their phone numbers.

preponderance of the evidence, that defendant's wrongdoing procured Shara's absence.  See *Burns*, 494 Mich at 115; *Jones*, 270 Mich App at 215.

In considering the totality of the circumstances, we are not definitely and firmly convinced that the trial court made a mistake in finding that defendant's request that Shara "stay out of the way" was the reason for Shara's unavailability at trial.  See *Gingrich*, 307 Mich App at 661.  Accordingly, we conclude that the trial court did not abuse its discretion in admitting Shara's prior statements under MRE 804(b)(6).  See *Burns*, 494 Mich at 110.

### III.  FIREARMS EVIDENCE

Defendant next argues that the prosecution presented improper propensity evidence because it was not offered for a proper noncharacter purpose under MRE 404(b) and the prosecution did not provide pretrial notice of the evidence.  Defendant specifically contests (1) Shara's statements indicating that she previously observed defendant with a shotgun and various handguns, and (2) a police officer's testimony regarding the discovery of a shotgun under a mattress in a bedroom at Shirley's home, in a room where documents including defendant's and Shara's names were also found.  In the alternative, defendant argues that defense counsel provided ineffective assistance when he failed to object to the evidence or request the redaction of Shara's prior statements regarding defendant's possession of firearms.  We reject defendant's claims.

### A.  STANDARD OF REVIEW

Defendant did not object to this evidence at trial.  Therefore, this issue is unpreserved, and defendant has the burden of establishing a plain error affecting his substantial rights.  *People v Benton*, 294 Mich App 191, 202; 817 NW2d 599 (2011).  To be entitled to appellate relief, defendant must establish "(1) that [an] error occurred, (2) that the error was 'plain,' (3) that the error affected substantial rights, and (4) that the error either resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings."  *People v Vaughn*, 491 Mich 642, 664-665; 821 NW2d 288 (2012), citing *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).  Demonstrating that a plain error affected a defendant's substantial rights "generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings."  *Carines*, 460 Mich at 763.

Because defendant did not move for a new trial or *Ginther*[3] hearing, our review of his ineffective assistance of counsel claim is limited to mistakes apparent from the record.  *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008).  "A claim of ineffective assistance of counsel is a mixed question of law and fact.  A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo."  *Id.*, citing *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).

---

[3] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

## B. MRE 404(b)

"All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Michigan, these rules, or other rules adopted by the Supreme Court. Evidence which is not relevant is not admissible." MRE 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. However, pursuant to MRE 404(b), evidence of a defendant's previous crimes, wrongs, or acts "is inadmissible to prove a propensity to commit such acts," but such evidence may be admissible for other purposes under MRE 404(b)(1). *People v Crawford*, 458 Mich 376, 383; 582 NW2d 785 (1998).

The Michigan Supreme Court recently clarified that, "by its plain terms, MRE 404(b) applies only to evidence of crimes, wrongs, or acts 'other' than the 'conduct at issue in the case' that risks an impermissible character-to-conduct inference." *People v Jackson*, 498 Mich 246, 262; 869 NW2d 253 (2015). Additionally,

> [e]vidence relevant to a noncharacter purpose is *admissible* under MRE 404(b) *even if* it also reflects on a defendant's character. Evidence is *inadmissible* under this rule *only* if it is relevant *solely* to the defendant's character or criminal propensity. Stated another way, the rule is not exclusionary, but is inclusionary, because it provides a nonexhaustive list of reasons to properly admit evidence that may nonetheless also give rise to an inference about the defendant's character. [*People v Mardlin*, 487 Mich 609, 615-616; 790 NW2d 607 (2010) (footnotes omitted); see also *Jackson*, 498 Mich at 258-259.[4]]

Likewise, MRE 404(b) is not implicated by evidence of a defendant's other acts that do not generate an intermediate character or propensity inference. *Jackson*, 498 Mich at 262. For instance, evidence that a defendant possessed a firearm like the one used to commit a crime does not implicate MRE 404(b) because it is directly relevant to the defendant's identity as the perpetrator, and an intermediate inference is not required for its relevancy. *Id.* at 262-263, citing *People v Houston*, 261 Mich App 463, 468-469; 683 NW2d 192 (2004), aff'd on other grounds 473 Mich 399 (2005). Likewise, "[e]vidence of a defendant's possession of a weapon of the kind used in the offense with which he is charged is routinely determined by courts to be direct, relevant evidence of his commission of that offense." *People v Hall*, 433 Mich 573, 580-581; 447 NW2d 580 (1989). To be relevant under MRE 401, it is not necessary that a firearm be conclusively identified as the gun used to commit the charged offense; it is sufficient that it be of the same kind used during the offense. See *id*. at 580-583, 582 n 7. Likewise, the fact that a

---

[4] As the Court further explained in *Mardlin*, undue prejudice arising from evidence that unavoidably reflects a defendant's character is addressed by the MRE 403 balancing test, and MRE 105 allows for the possibility of a limiting instruction regarding the purposes for which the jury may consider evidence that also reflects a defendant's character. *Mardlin*, 487 Mich at 616; see also *Jackson*, 487 Mich at 259-260.

defendant has access to a firearm similar to one used in the charged offense is adequate to establish relevancy. *People v Howard*, 391 Mich 597, 604; 218 NW2d 20 (1974).

Considering the lack of record evidence that the felon-in-possession charge was based on defendant's possession of a shotgun,[5] and the absence of any evidence that the victim was shot with a shotgun, we are persuaded that the shotgun evidence was not relevant to a material issue, or probative of a material fact, at trial. However, defendant's claim of plain error affecting his substantial rights under MRE 404(b) fails because there is no indication in the record that the evidence regarding a shotgun was offered to establish defendant's propensity to carry guns or commit criminal acts. The officer's testimony merely identified a shotgun as one of the items seized from Shirley's home on April 13, 2013, during the execution of a search warrant. Paperwork in the home also found during the search corroborated other testimony that defendant was staying at Shirley's home. The testimony regarding the discovery of the shotgun had no discernable probative value, other than to provide context for Shara's statements regarding a shotgun. When Shara was asked the same basic questions on April 13, 2013, April 14, 2013, and April 16, 2013, regarding whether she had previously seen defendant with a firearm, she twice mentioned a shotgun. However, she stated in her investigative subpoena testimony that the shotgun in Shirley's house belonged to her grandmother.

Therefore, even if the testimony regarding a shotgun could be considered plain error, appellate relief is not warranted because it did not affect defendant's substantial rights. See *Vaughn*, 491 Mich at 665-666. Because there was no evidence suggesting that the victim was killed with a shotgun, or that defendant's felon-in-possession conviction was premised on the possession of a shotgun, we perceive no indication that the limited testimony about a shotgun affected the outcome of the trial. See *Carines*, 460 Mich at 763.

Testimony regarding defendant's access to handguns was directly relevant to the pertinent conduct at issue. See *Hall*, 433 Mich at 582-583. While the murder weapon was never recovered, and there was no testimony identifying the specific type of firearm used to shoot the victim, the witnesses' observations of the unidentified man who was seen next to the victim's cab after the shooting supported an inference that the man possessed a handgun. Shara's statements during a police interview on August 14, 2013, indicated that defendant had a gun "most of the time," and she provided descriptions of different handguns that she had seen.[6] In addition, an empty handgun holster found during a search of Shirley's home supports an

---

[5] Nothing in the record indicates that the prosecution was seeking a conviction under MCL 750.224f based on defendant's possession of a firearm at some time or place other than the charged shooting on April 13, 2013. Likewise, the felony information indicates that the offense from which defendant's charges arose occurred on April 13, 2013.

[6] Several days later, Shara's provided an eight-month timeframe for her observations of defendant with handguns during her investigative subpoena testimony, at which time she indicated that she only saw the guns when she and defendant were at the home of defendant's aunt, and that she thought the guns belonged to defendant's cousin, even though she stated that "they be all [sic] using them."

inference that defendant had access to a handgun on the day of the incident. In light of this evidence, we conclude that the record does not support defendant's argument that the handgun-related testimony was offered solely for the purpose of establishing defendant's propensity to carry guns, or that the testimony otherwise generated an intermediate character inference. Rather, the evidence was directly relevant to the prosecutor's theory at trial that defendant used a handgun to shoot the victim.

Similarly, with regard to defendant's felon-in-possession charge, possession of a firearm may be established by direct or circumstantial evidence. *People v Flick*, 487 Mich 1, 14; 790 NW2d 295 (2010). Accordingly, Shara's statements regarding her observations of defendant with handguns and his accessibility to handguns at his aunt's house were directly relevant and admissible, independent of MRE 404(b), as to whether defendant possessed a firearm. See *Hall*, 433 Mich at 582-583; *Howard*, 391 Mich at 604.

Therefore, the handgun-related evidence was directly relevant to the charged conduct at issue and was not relevant solely to defendant's criminal propensity or character in violation of MRE 404(b). See *Mardlin*, 487 Mich at 615-616. Thus, defendant has failed to establish a plain error affecting his substantial rights. See *Vaughn*, 491 Mich at 664-665.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

We also reject defendant's alternative claim that defense counsel was ineffective for failing to object to the firearms-related evidence or request the redaction of the references to the firearms-related testimony. In order to prove that counsel provided ineffective assistance, a defendant must demonstrate that (1) " 'counsel's representation fell below an objective standard of reasonableness,' " and (2) defendant was prejudiced, i.e., "that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Vaughn*, 491 Mich at 669-671, quoting *Strickland*, 466 US at 688, 694. "A defendant must also show that the result that did occur was fundamentally unfair or unreliable." *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012). "Effective assistance of counsel is presumed," and a defendant bears a heavy burden of proving otherwise. *Petri*, 279 Mich App at 410. Likewise, a "[d]efendant must overcome a strong presumption that counsel's performance constituted sound trial strategy." *Id*. at 411.

Having concluded that there was no plain error in the admission of Shara's statements regarding defendant's possession of handguns, it follows that defense counsel's failure to object to this evidence, or request redaction of this testimony, was not objectively unreasonable. Counsel is not required to make futile objections or advance meritless arguments. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

With respect to the evidence regarding the shotgun, even if we assume, arguendo, that counsel's failure to object to or request redaction of the testimony was objectively unreasonable, there is not a reasonable probability that the outcome of trial would have been different but for defense counsel's purported error.

## IV. DOUBLE JEOPARDY

The prosecution concedes, and we agree, that defendant's convictions for first-degree felony-murder and second-degree murder arising from the death of one victim violates the constitutional prohibitions against double jeopardy, which protect defendant from multiple punishments for the same offense. See US Const, Am V; Const 1963, art 1, § 15; *People v Carter*, 395 Mich 434, 437-438; 236 NW2d 500 (1975); *People v Meshell*, 265 Mich App 616, 628-630; 696 NW2d 754 (2005); *People v Clark*, 243 Mich App 424, 429-430; 622 NW2d 344 (2000). "The remedy for conviction of multiple offenses in violation of double jeopardy is to affirm the conviction on the greater charge and to vacate the conviction on the lesser charge." *Meshell*, 265 Mich App at 633-634; see also *Clark*, 243 Mich App at 429-430.

Accordingly, we affirm defendant's first-degree felony-murder conviction, but vacate his conviction and sentence for second-degree murder.

## V. DEFENDANT'S STANDARD 4 BRIEF

### A. UNREASONABLE DELAY IN ARRAIGNMENT

In his brief filed *in propria persona* pursuant to Administrative Order 2004-6, Standard 4, defendant argues that his right to prompt arraignment without unnecessary delay was violated after his warrantless arrest on April 13, 2013, because he was not arraigned until April 18, 2013. Defendant has failed to demonstrate that he is entitled to relief.

### 1. STANDARD OF REVIEW

Because this argument pertains to defendant's first case, which was dismissed without prejudice in November 2013, and this issue was not raised in the trial court after charges were refiled, this issue is unpreserved. Thus, defendant has the burden of establishing a plain error affecting his substantial rights. *Vaughn,* 491 Mich at 664-665; *Carines*, 460 Mich at 763.

### 2. ANALYSIS

Even if we assume that there was, in fact, a delay in defendant's arraignment in his prior case, and that the delay was unreasonable,[7] defendant would not be entitled to dismissal of the prosecution or reversal of his conviction on appeal. *People v Cain*, 299 Mich App 27, 48-49; 829 NW2d 37 (2012), vacated in part on other grounds 495 Mich 874 (2013); see also *People v Mallory*, 421 Mich 229, 240-241; 365 NW2d 673 (1984); *People v Harrison*, 163 Mich App 409, 421; 413 NW2d 813 (1987); *People v McCoy*, 29 Mich App 589, 592; 185 NW2d 588 (1971). Rather, the appropriate remedy is suppression of any evidence directly procured as result of the unlawful detention. *Cain*, 299 Mich App at 49; see also *Mallory*, 421 Mich at 240-241; *Harrison*, 163 Mich App at 421; *McCoy*, 29 Mich App at 592. Consequently, if there is no

---

[7] See MCL 764.13; MCL 764.26; MCR 6.104(A); *People v Cain*, 299 Mich App 27, 48-49; 829 NW2d 37 (2012), vacated in part on other grounds 495 Mich 874 (2013); *Co of Riverside v McLaughlin*, 500 US 44, 56-57; 111 S Ct 1661; 114 L Ed 2d 49 (1991).

evidence to suppress, defendant cannot establish that the delay affected the outcome of the proceedings. *Cain*, 299 Mich App at 48-50. Defendant has neither identified any evidence that was improperly obtained as a result of the delay nor asserted that any evidence presented at trial should have been suppressed. Likewise, he has not described any other way in which he was prejudiced by the delay. See *Carines*, 460 Mich at 763.

Therefore, defendant has failed to establish a plain error affecting his substantial rights.

## B. JURISDICTIONAL CHALLENGES

Defendant also argues that defense counsel provided ineffective assistance when he failed to challenge the complaint and arrest warrant at the preliminary examination, which, according to defendant, would have divested the court of jurisdiction over his prosecution. We disagree.

## 1. STANDARD OF REVIEW

As stated *supra*, our review of defendant's ineffective assistance of counsel claim is limited to mistakes apparent from the record because he did not move for a new trial or *Ginther* hearing. *Petri*, 279 Mich App at 410. We review the trial court's findings of fact, if any, for clear error and review the ultimate constitutional issue *de novo*. *Id*. Defendant has the burden of establishing the factual predicate for his claim. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001), citing *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

## 2. ANALYSIS

It is unclear whether defendant's ineffective assistance of counsel claim pertains to defense counsel's performance at the preliminary examination in defendant's first case before it was dismissed, or to defense counsel's performance at the second preliminary examination held after the charges were refiled. If defendant is referring to the preliminary examination in the first case that was dismissed, he necessarily has failed to establish the factual predicate of his claim, as the instant appeal only pertains to the second case, and we have no record from the initial case.[8] See *Carbin*, 463 Mich at 600. However, even if defendant's claim arises from defense counsel's failure to challenge the refiled complaint and reauthorized arrest warrant at the second preliminary examination, he still has failed to demonstrate that reversal is warranted on the basis of ineffective assistance of counsel.

First, defendant's claim that the complaint and arrest warrant were defective has no merit. Defendant argues that the complaint was defective because it "contain[ed] conclusory statements with no statement of underlying facts that [he] committed the crime in question." MCR 6.101(A) provides that a "complaint must include the substance of the accusation against the accused and the name and statutory citation of the offense." See also MCL 764.1d. The complaint in this case lists each offense with which defendant was charged. It also includes the statutory citation and a brief explanation of each offense, including the date, location, and name

---

[8] Likewise, defendant has not requested that we expand the record pursuant to MCR 7.216(A)(4).

of the victim.  These factual allegations fulfilled MCR 6.101(A).  Cf. *Cain*, 299 Mich App at 52 (holding that a complaint signed by magistrate that listed each charged offense, along with the statutory citations and a brief explanation of the offenses, was sufficient to satisfy MCR 6.101(A) and (B)).  Accordingly, the arrest warrant was not defective based on the contents of the complaint, see *People v Manning*, 243 Mich App 615, 621; 624 NW2d 746 (2000), and defendant has failed to establish that counsel's failure to object to the contents of the complaint at the preliminary examination fell below an objective standard of reasonableness.  See *Vaughn*, 491 Mich at 669-671.  Again, counsel need not make futile objections or advance a meritless argument.  *Ericksen*, 288 Mich App at 201.

Furthermore, even if a complaint or arrest warrant is defective, the court's jurisdiction over a defendant's case is not affected by a defect in these documents or the timing of an accused's challenge to a defective complaint or arrest warrant.  The Michigan Supreme Court held in *People v Burrill*, 391 Mich 124, 132; 214 NW2d 823 (1974), that a defect in a complaint neither affects the commencement of the criminal proceedings nor invalidates the trial court's jurisdiction over the case.  *People v Mayberry*, 52 Mich App 450, 451; 217 NW2d 420 (1974).  Similarly, an invalid arrest warrant, even one based on an invalid complaint, does not affect a court's jurisdiction to try a defendant or conduct a preliminary examination to determine whether there is sufficient evidence to bind a defendant over for trial on the charges.  *Burrill*, 391 Mich at 132-134.  See also *Porter v Porter*, 285 Mich App 450, 462; 776 NW2d 377 (2009) ("[I]n a criminal case, an illegal arrest or arrest warrant issued on defective procedure will not divest a court of jurisdiction when the court has jurisdiction over the charged offense and the defendant appears before the court."); *People v Rice*, 192 Mich App 240, 244; 481 NW2d 10 (1991) ("The invalidity of an arrest does not deprive a court of jurisdiction to try a defendant.").

Therefore, we reject defendant's jurisdictional claim based on purported defects in the complaint and arrest warrant as well as his claim regarding the timing of raising such a claim under *People v Hill*, 44 Mich App 308, 317; 205 NW2d 267 (1973), overruled by *Mayberry*, 52 Mich App 450.  Because these claims have no merit, defendant has failed to establish ineffective assistance of counsel on such grounds.  See *Vaughn*, 491 Mich at 669-671; *Ericksen*, 288 Mich App at 201.

## C.  REQUEST FOR HABEAS CORPUS RELIEF

Lastly, we decline to address defendant's request for habeas corpus relief based on the alleged jurisdictional defect because this claim is not properly before this Court.  Defendant's reliance on MCL 600.4310 is misplaced, as the matter before us involves a direct appeal from defendant's convictions, not an action for habeas relief.  See generally *Moses v Dep't of Corrections*, 274 Mich App 481, 484-486; 736 NW2d 269 (2007); see also *Morales v Michigan Parole Bd*, 260 Mich App 29, 40; 676 NW2d 221 (2003).[9]

---

[9] To the extent that defendant raises claims in his Standard 4 brief that were not specifically addressed by this Court, we have reviewed all of these arguments and determined that they lack merit.

## VI. CONCLUSION

Defendant has failed to establish that reversal of his convictions is required based on his claims of evidentiary error, the alleged violation of his right to a prompt arraignment, or his claims of ineffective assistance of counsel. However, we agree with the parties that defendant's convictions for first-degree felony-murder and second-degree murder arising from the death of one victim violates the constitutional prohibitions against double jeopardy.

Accordingly, we vacate defendant's conviction of second-degree murder, affirm the remaining convictions and sentences, and remand for the ministerial task of amending the judgment of sentence. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Kathleen Jansen
/s/ Karen M. Fort Hood

-11-